**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LUZ OVIEDO AND** | ) | |
| **MARIA COLLINS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.** |
| **v.** | ) | |
| | ) | |
| **ADMIRAL LINEN AND UNIFORM** | ) | **JURY TRIAL DEMANDED** |
| **SERVICE, BY ALSCO, INC.;** | ) | |
| **MICHAEL DIKES.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORIGINAL COMPLAINT

Plaintiffs LUZ OVIEDO ("Ms. Oviedo") and MARIA COLLINS ("Ms. Collins") (collectively "Plaintiffs"), by and through their attorneys, bring this action for damages and other legal and equitable relief from Defendants ADMIRAL LINEN AND UNIFORM SERVICE, by ALSCO, Inc. ("ALSCO") and MICHAEL DIKES ("Mr. Dikes") (Collectively "Defendants"), for violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 42 U.S.C. §2000e *et seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.* ("§ 1981"), the Americans with Disabilities Act of 1990, as amended 42 U.S.C. §§ 12111 *et seq.* ("ADA"), the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.* ("TLC"), and any other cause(s) of action that can be inferred from the facts set forth herein.

**ORIGINAL COMPLAINT**

## INTRODUCTION

1.      This is an action brought by Plaintiffs against ALSCO for implementing and maintaining a work environment with rampant discrimination, harassment, and retaliation. Plaintiffs have experienced and reported widely pervasive and often horrific instances of sexual assault, discrimination, harassment, and retaliation by supervisors and co-workers at ALSCO— including rape and use of the word "nigger." Throughout their employment, ALSCO management ignored and turned a blind eye to widespread discrimination, doing nothing of significance to address the Plaintiffs' complaints or issues.

2.      Ms. Oviedo suffered routine and violent sexual harassment and discrimination by her manager, Michael Dikes. Over the course of more than five years, Mr. Dikes repeatedly raped Ms. Oviedo and demanded sexual favors in exchange for her continued employment. Other supervisors at ALSCO saw Mr. Dikes' harassment of Ms. Oviedo firsthand and higher-level management was repeatedly informed of Mr. Dikes' horrific abuse of Ms. Oviedo. But ALSCO management refused to take any significant action to stop the repeated sexual assault and harassment of Ms. Oviedo. Ultimately, Ms. Oviedo was the victim of a retaliatory termination for her complaints about harassment and sexual assault.

3.      Ms. Collins was the victim of severe and routine discrimination and harassment on the basis of her race, sex, and disability by supervisors and co-workers at ALSCO. From the outset, Ms. Collins was told she was being hired in a managerial role and that she had scored higher than any applicant ever on ALSCO's aptitude test for management positions. But instead she was given the lower-paying position of Route Service Representative ("RSR"). She was the only Black woman in this role and was paid significantly less than the rest of the RSRs. After Ms. Collins was hurt in an on-the-job car accident and forced into office duty, she experienced severe and pervasive

**ORIGINAL COMPLAINT**

sexual and racial harassment, including inappropriate comments about her body and appearance. ALSCO management attempted to force her to return to driving duty and insisted that an HR representative sit in on her doctor appointments. When Ms. Collins complained about being made to take a defensive driving course that no other employee was required to take, Ms. Collins was called a "lazy ass nigger" by an ALSCO supervisor. Ms. Collins was the victim of a retaliatory termination for her complaints about discrimination and harassment.

4.       Plaintiffs seek damages for ALSCO's acts of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e *et seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq*., the Americans with Disabilities Act of 1990, as amended 42 U.S.C. §§ 12111 *et seq*., and the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*. Plaintiffs also seek damages for ALSCO's negligent hiring, supervision, and retention as well as any other cause(s) of action that can be inferred from the facts set forth herein. Ms. Oviedo also seeks damages for Mr. Dikes' actions that constitute torts of assault and battery, as well as any other cause(s) of action that can be inferred from the facts set forth herein.

5.       ALSCO employed both Plaintiffs. Ms. Oviedo began her employment in or around April 2012 until her retaliatory termination in or around September 2018. Ms. Collins began her employment in or around July 2013 until her retaliatory termination in or around January 2018.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress

**ORIGINAL COMPLAINT**

providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. §§ 2000e et seq., as amended, and (iii) 42 U.S.C. §§ 1981 et seq., as amended.

7.      The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this Court pursuant to 42 U.S.C. §§ 2000e *et seq.*, as amended, 42 U.S.C. §§ 1981 *et seq*., as amended, and 29 U.S.C. §§ 201 *et seq.*, as amended, in as much as this judicial district lies in a State and judicial district in which the unlawful employment practices and torts occurred. Venue is also proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and/or reside in this district.

## PARTIES

9.      Ms. Oviedo is a person who has been aggrieved by ALSCO's actions. She is and has been, at all relevant times, a permanent resident of the United States of America and is a resident of Tarrant County.

10.     At all relevant times, Ms. Oviedo was ALSCO's employee and therefore covered by Title VII, the ADA, and the TLC.

11.     Ms. Collins is a person who has been aggrieved by ALSCO's actions. She is and has been, at all relevant times, a citizen of the United States of America and is a resident of Tarrant County.

12.     At all relevant times, Ms. Collins was ALSCO's employee and therefore covered by Title VII, the ADA, and the TLC.

**ORIGINAL COMPLAINT**

13.     ALSCO is a linen and uniform-rental business service provider with around 180 locations and more than 20,000 employees. ALSCO is headquartered at 175 South West Temple, Suite 510, Salt Lake City, Utah.

14.     Mr. Dikes was an employee of ALSCO for all relevant times until his apparent termination in or around June 2018.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

15.     Plaintiffs have timely filed complaints of discrimination and retaliation with the EEOC.

16.     Plaintiffs who have herein alleged claims pursuant to Title VII have received their Notices of Right to Sue letters from the EEOC within ninety (90) days prior to the filing of this Complaint.

## STATEMENT OF FACTS

### I.     Facts Regarding Plaintiffs' Discrimination Claims

#### a.     Facts Pertaining to Plaintiff Oviedo

17.     Ms. Oviedo was employed by ALSCO as a production employee in the Medical Pack-Out section beginning on or around April 2012, under the supervision of production manager Mr. Dikes. Ms. Oviedo worked for ALSCO until around September 24, 2018, when she was subjected to a retaliatory termination.

18.     Throughout her time at ALSCO, Ms. Oviedo was subjected to extreme and repeated inappropriate behavior and comments, sex discrimination, sexual harassment, and repeated sexual assault by her manager Mr. Dikes.

19.     Specifically, Mr. Dikes explicitly required sexual favors from Ms. Oviedo in exchange for her continued employment and his approval of time-off requests. Further, ALSCO's

**ORIGINAL COMPLAINT**

failure to respond to her repeated complaints and remedy the severe and pervasive discrimination and harassment she faced created a hostile work environment.

20.     When Ms. Oviedo first began working at ALSCO, she noticed that Mr. Dikes seemed to be constantly present around the area she worked in, despite his job requiring oversight of a much larger area.

21.     Ms. Oviedo heard coworkers say that Mr. Dikes tended to "hang around" single women. Mr. Dikes would often give Ms. Oviedo chocolate and gum while working. She initially believed that he wanted to be friends with her, and accepted it as a gift between friends.

22.     In or around 2013, Mr. Dikes moved Ms. Oviedo to a different part of the facility, with different machines than those with which she had previously worked. Mr. Dikes would frequently visit Ms. Oviedo in this new area. The female team leader of the pack-out would help translate when Ms. Oviedo did not fully understand Mr. Dikes. She told Ms. Oviedo that Mr. Dikes was interested in Ms. Oviedo and wanted to spend more time with her. The team leader then also began saying complimentary things about Mr. Dikes to Ms. Oviedo.

23.     In or around October 2013, the team leader told Ms. Oviedo that Mr. Dikes wanted to see her, and told her to meet him at a Walmart. Ms. Oviedo did not know where it was, and the team leader provided her with directions. Once there, Ms. Oviedo got into Mr. Dikes' car. Mr. Dikes unbuttoned his pants, and proceeded to grab Ms. Oviedo and push her head into his groin. Ms. Oviedo was forced to perform oral sex on Mr. Dikes as she feared she would lose her job if she did not comply with his demands. Immediately after the assault, Ms. Oviedo began to cry in Mr. Dikes' car. He responded by telling her that "everything was fine." Ms. Oviedo continued to feel very upset about the incident. She also observed Mr. Dikes speaking with several women at

**ORIGINAL COMPLAINT**

the plant in a flirtatious manner. He continued to harass her and call her cell phone frequently, using his company cell phone.

24.     In or around December 2013, Mr. Dikes once again forced Ms. Oviedo to perform oral sex. In or around 2014, Mr. Dikes frequently came to Ms. Oviedo at work and tried to touch her inappropriately. Every time that he would do so, Ms. Oviedo would tell her female team leader that it made her uncomfortable, but the team leader would say it was fine. Ms. Oviedo made verbal complaints to Human Resources, but nothing was done.

25.     In or around May of 2014, Mr. Dikes asked Ms. Oviedo to go for a drive, and brought her to his mother's house. When there, Mr. Dikes made her an alcoholic drink and then grabbed and forced Ms. Oviedo to have sexual intercourse. Ms. Oviedo was fearful of losing her job and Mr. Dikes knew this and used this fear against Ms. Oviedo. He often implied that Ms. Oviedo could lose her job if she rejected his advances.

26.     In the summer of 2014, Mr. Dikes forced Ms. Oviedo into sexual intercourse at his mobile home.

27.     Approximately four weeks later, he forced her into sexual intercourse a third time.

28.     In the summer of 2015, Mr. Dikes forced Ms. Oviedo to have sexual intercourse with him for the fourth time at the house of a friend of his. This occurred four (4) times at this residence—bringing the total instances of forced sexual intercourse to at least eight (8).

29.     On two separate occasions in or around 2016, ALSCO's general manager came to Ms. Oviedo's area while Mr. Dikes was there and yelled at him saying "get your ass out of medical pack-out and leave Lucy the hell alone." Ms. Oviedo's nickname is "Lucy." Mr. Dikes would leave, but after a few hours he would return and resume harassing her. Mr. Dikes continued to harass Ms. Oviedo via calls and text messages through 2016 and 2017.

**ORIGINAL COMPLAINT**

30.     In or around May 2017, Mr. Dikes informed Ms. Oviedo that her position as team lead for Medical Pack-out and the team lead for another production section would likely be merged into one, and he was not sure who would get the new position. Ms. Oviedo told Mr. Dikes that she thought the quality of her work showed that she was well qualified for the new position, and that she needed to keep her job. Mr. Dikes shook his head and asked if she was still seeing her current boyfriend. This made Ms. Oviedo feel that her job would be in jeopardy if she did not cease her relationship and submit to Mr. Dikes' repeated demands to have sexual intercourse with him. Also in or around May 2017, Mr. Dikes showed Ms. Oviedo two folders full of photographs of her that he had secretly taken.

31.     At this point, ALSCO had known about the harassment by Mr. Dikes for nearly three years, as Ms. Oviedo had reported Mr. Dikes' behavior on numerous occasions. Yet ALSCO failed to take any remedial action to restrain Mr. Dikes' ability to harass and assault his subordinates.

32.     Ms. Oviedo began to fear for her safety. On May 25, 2017, she spoke to ALSCO's human resources manager. She told the HR manager, Barbara Johnson ("Ms. Johnson"), about the calls, text messages, and the forced sexual encounters. Ms. Johnson told Ms. Oviedo not to tell anyone else, and said that she would investigate her claims. Upon information and belief, Ms. Johnson shared information regarding Ms. Oviedo's complaint with General Manager Tony Manley ("Mr. Manley"), Mr. Dikes' superior and also his close friend.

33.     Upon information and belief, ALSCO failed to conduct an investigation or take any corrective action after Ms. Oviedo's complaint to the HR manager. Mr. Dikes was allowed to continue to assault and harass Ms. Oviedo with impunity.

**ORIGINAL COMPLAINT**

34.     In or around June 2017, Ms. Oviedo spoke with an ALSCO human resources assistant, who told her that several women had made similar complaints about Mr. Dikes. She said that she would get Ms. Oviedo a copy of the complaints, but a few days later this assistant began avoiding Ms. Oviedo.

35.     Word of Ms. Oviedo's complaint spread throughout ALSCO. Mr. Manley began singing the song "La Cucaracha" around Ms. Oviedo, mocking her complaints. Ms. Oviedo's former team lead began saying that she was lying, and told Ms. Oviedo in an intimidating manner that she would "meet her outside." She also called Ms. Oviedo derogatory names and elbowed her in the hallway.

36.     Mr. Dikes continued to harass Ms. Oviedo through numerous calls and texts. Mr. Dikes frequently sent Ms. Oviedo sexually explicit text messages and pictures.

37.     In or around April 2018, Ms. Oviedo was forced to have sexual intercourse with Mr. Dikes again. Afterwards she asked him to "please leave [her] alone," to which he replied, "Don't worry." In or around that same month, Mr. Dikes approached Ms. Oviedo's work area and began groping her. She told him to stop touching her and asked him to leave her work area. Mr. Dikes then asked a female coworker to slap Ms. Oviedo.

38.     In or around May 5, 2018, Mr. Dikes told Ms. Oviedo he had something to give her for her house. She attempted to decline, but he continued to insist. She then told him he could put it in her car. Mr. Dikes replied that he would bring it to her house after work. Ms. Oviedo very clearly told him not to come to her home. Mr. Dikes ignored this request and showed up at Ms. Oviedo's door with ALSCO carpets. Ms. Oviedo apprehensively let him into the house. He asked Ms. Oviedo if they could use her bed for sex. She refused. She then led him out to the back porch, and went inside and instructed her son to come outside in one minute with an excuse that would

**ORIGINAL COMPLAINT**

make Mr. Dikes leave. Immediately upon her return to the porch Mr. Dikes began groping Ms. Oviedo. Her son came out and said that his father was on the phone and wanted to speak with Ms. Oviedo. Mr. Dikes left, but called Ms. Oviedo immediately afterwards and said, "This is gonna cost you extra."

39.     Ms. Oviedo returned the carpets to the HR Manager, Ms. Johnson, and made another complaint about Mr. Dikes' harassing behavior. Upon information and belief, HR did not conduct an investigation and Mr. Dikes was not disciplined.

40.     In or around May 2018, Mr. Dikes told Ms. Oviedo she would have to "make time for him, at least two hours," in order for him to approve her requested time off.

41.     On May 11, 2018, Ms. Oviedo filed a Charge of Discrimination against ALSCO with the Equal Employment Opportunity Commission ("EEOC"). On or around May 28, 2018, ALSCO received a letter notifying them of Ms. Oviedo's EEOC charge. Ms. Oviedo was asked to go to ALSCO's HR office. She wrote a statement of the events experienced and gave HR phone records as well as text messages. The ALSCO HR manager, Ms. Johnson, pretended that Ms. Oviedo had not previously reported these issues and asked Ms. Oviedo why she had not told her about the harassment previously. Ms Oviedo replied that she had told her about it a year previously.

42.     After leaving the HR manager's office, Ms. Oviedo returned to her workstation and found that her chair had disappeared. Ms. Johnson made a comment about it saying that "things are changing around here."

43.     In or around June 2018, Mr. Dikes was fired. Upon information and belief, the HR manager and all other members of management who knew about the sexual harassment and retaliated against Ms. Oviedo are still employed by the company.

**ORIGINAL COMPLAINT**

44.     On or around September 24, 2018, Ms. Oviedo was subjected to a retaliatory termination.

### b.  Facts Pertaining to Plaintiff Collins

45.     Ms. Collins was employed by ALSCO as a Route Service Representative ("RSR") beginning in or around July 2013. Ms. Collins worked for ALSCO until she was subjected to a retaliatory termination on or around January 3, 2018.

46.     Throughout her employment at ALSCO, Ms. Collins has been the victim of routine and severe instances of discrimination on the basis of her race, sex, and disability. She was also subjected to pay discrimination, harassment because of her sex and race, and ultimately a retaliatory termination in response to her complaints. ALSCO did nothing to address the climate of rampant harassment and discrimination at its facility despite repeated verbal and written pleas from Ms. Collins and others. ALSCO's failure to take any serious steps to remedy these issues resulted in a hostile work environment for Ms. Collins where co-workers and supervisors were able to make discriminatory comments with impunity.

47.     From the outset of her employment with ALSCO, Ms. Collins has noted significant differential treatment on the basis of her race and sex. In or around July 2013, Ms. Collins applied for a position at ALSCO as a manager. The application, interview, assessment testing, and onboarding paperwork she completed was for a managerial position. Ms. Collins was asked to come into the facility to meet with the route manager at the time. The route manager informed Ms. Collins she had received the highest score he had seen on her qualifying exam for the management position, but that the management position had been filled. Upon information and belief, the person hired for the management position was White.

48.     She was told that she would still be hired, but she would need to drive the delivery truck routes until another position opened up. Ms. Collins was informed that all managers must first learn the routes, and that positions are open "all the time." However, throughout her employment with ALSCO, a position never "opened up" and she was never promoted to the position for which she applied and for which she was qualified.

49.     Ms. Collins spent the first three to four weeks riding along the route with a supervisor. She received no training on how to operate the truck itself. Once that three to four week period was over, it became clear that ALSCO intended to keep Ms. Collins as a driver, and not move her into management as she had been previously promised. When she spoke with her supervisor about this, she was informed that the driver position "needed to be filled." This was the first time that Ms. Collins learned that she had actually been hired as a Route Service Representative ("RSR"). Ms. Collins reminded her supervisor that she had not been trained on how to drive the box truck used by RSRs.

50.     Upon information and belief, Ms. Collins was the only African-American female RSR and she received lower wages compared to the other RSRs. She learned that the difference in their wages was due in large part to the fact that the rest of the RSRs who were not African-American received commission for their routes. Ms. Collins brought this issue to her supervisor, who agreed that she should receive commission as well and for a brief period of time Ms. Collins did begin to receive commissions. But Ms. Collins stopped receiving commissions after her supervisor changed in or around late 2013.

51.     In 2014, Ms. Collins approached her new supervisor to discuss the fact that she had not been receiving commissions. He told her that her route was too small to receive commissions,

**ORIGINAL COMPLAINT**

and that she should never have received them. Upon information and belief, every RSR but Ms. Collins received commissions.

52.     In or around July 2014, Ms. Collins was involved in an accident while on a route. The other driver had run a red light and admitted fault. When the accident occurred, Ms. Collins called ALSCO to report it and the fleet manager, who was also her division manager, drove to the scene. Mr. Collins heard her manager tell another manager that it "must have been the faulty brakes." Ms. Collins sustained injuries from this accident in the form of herniated discs in her lower back, as well as shoulder and neck pain. After the accident, Ms. Collins was told by her manager that the accident "must have been her fault."

53.     After the accident, Ms. Collins was put on light duty while she went to physical therapy for two weeks.

54.     After two weeks her manager requested that Ms. Collins return to her route. Ms. Collins told him that her doctor had not released her to return to work. After this, her supervisor began to refer to Ms. Collins as a "troublemaker." Ms. Collins was told by a different manager that her manager had asked him to watch Ms. Collins closely so that he could find a way to get rid of "this Sista," a racial slur used to describe African-American women.

55.     Ms. Collins remained on light duty for nine months. This required her to complete office work at the route office in the ALSCO facility. Once working in the office, Ms. Collins began to experience pervasive sexual harassment and repeatedly hear racially charged comments and slurs. The sexually harassing comments Ms. Collins heard included, "You know you are 'wearing' that uniform," "How do you hold all those things in your shirt pocket?" "I wish my uniform fit like that," and "Did you see the safety manual?" Ms. Collins was one of the RSRs featured with her photograph in the safety manual.

**ORIGINAL COMPLAINT**

56.     Ms. Collins became incredibly self-conscious and uncomfortable at work. In hopes of curbing some of the harassment, she decided to come to work while on light duty in her own personal clothes, since she would not be interacting with customers during this time. She was subsequently invited to a meeting with the HR manager and a supervisor where she was informed they wanted her to continue wearing the uniform on light duty. Upon information and belief, other employees were allowed to wear personal clothing while working in the office.

57.     In or around November 2014, Ms. Collins was called into a meeting with the HR manager and two of her managers. She was informed that her doctor had called and cleared her to return to her route. Ms. Collins questioned that statement, saying that she had been to the doctor's office the day before, and he had told her that he was going on vacation. She asked for the name of the doctor from whom they had heard this and was not provided with an answer. Ms. Collins informed HR that she would not return to her route until she was cleared by her doctor.

58.     A few weeks after this meeting, Ms. Collins was told by a manager that she was not allowed to drive herself to her next doctor's appointment. The HR manager drove Ms. Collins to the appointment and entered the examination room, claiming that because the accident was work related she was allowed to sit in the room while Ms. Collins was examined. Ms. Collins was uncomfortable with this but felt she had no choice but to comply. The HR manager remained in the examination room for the duration of the appointment and tried to ask the physician questions. These actions were far beyond any reasonable business necessity and were an intrusion into Ms. Collins' private medical conversations with her doctor.

59.     In or around the winter holiday season of 2014, the route manager came to the route office and told the employees that they were allowed to leave and go home early. The normal time for the end of the shift was 5:00 pm. When Ms. Collins began packing her belongings up, the

**ORIGINAL COMPLAINT**

manager said, "not you," and informed her that since she was on light duty she needed to stay until 5:00 pm. Because the work that Ms. Collins performed during that time came from the regular office workers, she had no tasks to complete after they left. Ms. Collins had to sit at her desk doing nothing while the entire plant, with the exception of the Closing Manager, was able to leave early.

60.     In or around November 2017, Ms. Collins was told that she had to take a defensive driving course within 30 days and that she would have to pay for it herself. The HR manager told her that if she did not take the course, Ms. Collins would most likely be fired. Upon information and belief, there were a total of 37 or more accidents in 2017 by RSRs, and no other RSR was required to take a defensive driving course. At this point in the meeting, a male member of management began referring to Ms. Collins again as "Sista." Ms. Collins asked why she was being required to take the course and was told that there was an alleged incident. She later learned that production manager Mr. Dikes had told an employee to write a complaint against Ms. Collins.

61.     Upon leaving the meeting, Ms. Collins immediately made a call to corporate and asked if the defensive driving course requirement was in line with company policy. The corporate representative promised to notify the Human Resources director and have her look into the issue further. Upon information and belief, no further action was taken.

62.     On or around November 17, 2017, Ms. Collins went to speak with Mr. Weaver, ALSCO's Safety Manager, about the defensive driving course requirement. Mr. Weaver was puzzled and did not understand why Ms. Collins would need to complete such a requirement. He began printing out pages of the safety manual for Ms. Collins, but was stopped by the General Manager, Mr. Manley. Mr. Manley told Mr. Weaver that if he was trying to assist Ms. Collins in understanding the defensive driving course it was "not a safety issue" and he did not need to print

**ORIGINAL COMPLAINT**

documents for her. Ms. Collins then asked him to clarify that the course requirement was indeed not a safety issue. Mr. Manley then referred to Ms. Collins as a "lazy ass nigger."

63.     On or around December 8, 2017, Ms. Collins spoke with Mr. Weaver, who informed her that the other managers had told him they did not want him to speak with "that Sista." Two of Ms. Collins' supervisors then approached them and told Ms. Collins to finish loading her truck and start her route. They then requested Mr. Weaver speak with them in the office.

64.     On or around January 3, 2018, Ms. Collins was subjected to a retaliatory termination.

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### The Equal Pay Act, 29 U.S.C. §§ 206(d) *et seq.*
### (Discrimination in Pay as Alleged by Ms. Collins Against ALSCO)

65.     Ms. Collins is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

66.     ALSCO discriminated against Ms. Collins on the basis of sex by paying her lower wages and other forms of compensation than ALSCO paid to male employees for equal work on jobs, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions, in violation of the Equal Pay Act.

67.     Ms. Collins' male predecessors and/or comparators held the exact same job, in the same establishment, performed equal work that required equal skills, effort, and responsibility, and the work was performed under the same conditions.

68.     The difference in pay between Ms. Collins' male predecessors and/or comparators was not due to seniority, merit, quantity or quality of production, or a factor other than sex. Instead, the differential in pay was due to sex.

**ORIGINAL COMPLAINT**

69.     ALSCO's actions were not done in good faith nor did they have any reasonable grounds for believing that their acts or omissions were not a violation of the Equal Pay Act.

70.     ALSCO's actions were willful and lasted for the duration of the relevant time periods.

71.     Ms. Collins' requests for relief are set forth below.

## AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.
### (Intentional Discrimination on Account of Sex as Alleged by All Plaintiffs Against ALSCO)

72.     Ms. Oviedo and Ms. Collins are members of a protected class and repeat and re-allege the allegations in the preceding paragraphs, as if fully set forth herein.

73.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as ALSCO has engaged in the practice of discrimination against Ms. Oviedo and Ms. Collins with respect to the terms and conditions of Plaintiffs' employment.

74.     Due to Ms. Collins' sex, ALSCO subjected Ms. Collins to discrimination and discriminatory denial of promotional opportunities for which she was qualified.

75.     Plaintiffs' requests for relief are set forth below.

## AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.
### (Disparate Treatment Discrimination (Intentional Discrimination) on Account of Race as Alleged by Ms. Collins Against ALSCO)

76.     Ms. Collins is a member of a protected class and repeats and re-alleges the allegations in the preceding paragraphs, as if fully set forth herein.

77.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as ALSCO has engaged in the practice of discrimination

**ORIGINAL COMPLAINT**

against Ms. Collins with respect to the terms and conditions of her employment based upon her race and/or color.

78.     Due to Ms. Collins' race, ALSCO subjected Ms. Collins to discrimination and discriminatory denial of promotional opportunities for which she was qualified.

79.     Plaintiff's requests for relief are set forth below.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*
(Hostile Work Environment as Alleged by All Plaintiffs Against ALSCO)**

80.     Ms. Oviedo and Ms. Collins are members of a protected class and repeat and re-allege the allegations in the preceding paragraphs, as if fully set forth herein.

81.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as ALSCO has engaged in gender harassment and has created, maintained, and condoned a hostile work environment towards Ms. Oviedo and Ms. Collins.

82.     Plaintiffs' requests for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*
(Quid Pro Quo Harassment as Alleged by Ms. Oviedo Against ALSCO)**

83.     Ms. Oviedo is a member of a protected class and repeats and re-alleges the allegations in the preceding paragraphs, as if fully set forth herein.

84.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as ALSCO has engaged in quid pro quo harassment. Ms. Oviedo was the target of unwelcome sexual advances and assault and told by ALSCO management that her continued employment was contingent upon her acceptance of sexual assault.

**ORIGINAL COMPLAINT**

85.     Ms. Oviedo's requests for relief are set forth below.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
**(Retaliation as Alleged by All Plaintiffs Against ALSCO)**

86.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

87.     Plaintiffs lodged complaints with ALSCO and participated in investigations regarding the discrimination and hostile work environment pervasive at ALSCO, and as such, engaged in protected activity under Title VII.

88.     ALSCO retaliated against Plaintiffs by, among other things, terminating their employment.

89.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

90.     Plaintiffs' requests for relief are set forth below.

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF**
**Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.***
**(Disparate Treatment Discrimination (Intentional Discrimination) on Account of Race as Alleged by Ms. Collins Against ALSCO)**

91.     Ms. Collins is a member of a protected class and repeats and re-alleges the allegations in the preceding paragraphs, as if fully set forth herein.

92.     Ms. Collins was subjected to discrimination on the basis of race and/or color by ALSCO.

93.     The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 et seq. as ALSCO has engaged in the practice of discrimination against Ms. Collins.

**ORIGINAL COMPLAINT**

94.     Due to Ms. Collins' race and/or color, ALSCO subjected Ms. Collins to discriminatory compensation and discriminatory denial of promotional opportunities and/or titles for which they were qualified and to which Plaintiffs' White and Hispanic co-workers were not subjected.

95.     Plaintiff's requests for relief are set forth below.

**AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF**
**Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.***
**(Hostile Work Environment as Alleged by Ms. Collins Against ALSCO)**

96.     Ms. Collins is a member of a protected class and repeats and re-alleges the allegations in the preceding paragraphs, as if fully set forth herein.

97.     Ms. Collins was subjected to discrimination on the basis of race and/or color by ALSCO.

98.     The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 et seq. as ALSCO has engaged in racial harassment and has created, maintained, and condoned a hostile work environment towards Ms. Collins.

99.     Plaintiff's requests for relief are set forth below.

**AS AND FOR A NINTH CAUSE OF ACTION FOR A VIOLATION OF**
**Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.***
**(Retaliation as Alleged by Ms. Collins Against ALSCO)**

100.    Ms. Collins is a member of a protected class and repeats and re-alleges the allegations in the preceding paragraphs, as if fully set forth herein.

101.    Ms. Collins was subjected to discrimination on the basis of race and/or color by ALSCO.

102.    The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 et seq. as ALSCO has engaged in retaliation against Ms. Collins by, among other

**ORIGINAL COMPLAINT**

things, terminating her employment in response to her complaints about racial discrimination and harassment.

103.    Plaintiff's requests for relief are set forth below.

## AS AND FOR A TENTH CAUSE OF ACTION FOR A VIOLATION OF
### The Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12111 *et seq.*
### (Disparate Treatment as Alleged by Ms. Collins Against ALSCO)

104.    Ms. Collins is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

105.    The conduct alleged herein violates the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12111 *et seq.*, as ALSCO has engaged in the practice of discrimination with respect to the terms and conditions of Ms. Collins' employment.

106.    Due to the Ms. Collins' disability, Defendants subjected Plaintiff to discriminatory denial of promotional opportunities for which she was qualified and ultimately terminated her.

107.    Plaintiff's requests for relief are set forth below.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION FOR A VIOLATION OF
### The Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12111 *et seq.*
### (Retaliation as Alleged by Ms. Collins Against ALSCO)

108.    Ms. Collins is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

109.    The conduct alleged herein violates the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12111 *et seq.*, as ALSCO has engaged in retaliation against Ms. Collins by, among other things, terminating her employment in response to her complaints about discrimination on the basis of her disability.

110.    Plaintiff's requests for relief are set forth below.

**ORIGINAL COMPLAINT**

**AS AND FOR A TWELTH CAUSE OF ACTION FOR A VIOLATION OF**
**Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.***
**(Discrimination on Basis of Sex as Alleged by All Plaintiffs Against ALSCO)**

111.    Ms. Oviedo and Ms. Collins are members of a protected class and repeat and re-allege the allegations in the preceding paragraphs, as if fully set forth herein.

112.    The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as ALSCO has engaged the practice of discrimination with respect to the terms and conditions of Ms. Oviedo and Ms. Collins' employment on the basis of their sex.

113.    Plaintiffs' requests for relief are set forth below.


**AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR A VIOLATION OF**
**Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.***
**(Discrimination on Basis of Race as Alleged by Ms. Collins Against ALSCO)**

114.    Ms. Collins is a member of a protected class and repeats and re-alleges the allegations in the preceding paragraphs, as if fully set forth herein.

115.    The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as ALSCO has engaged the practice of discrimination with respect to the terms and conditions of Ms. Collins' employment on the basis of her race.

116.    Plaintiff's requests for relief are set forth below.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION FOR A VIOLATION OF**
**Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.***
**(Hostile Work Environment as Alleged by All Plaintiffs Against ALSCO)**

117.    Ms. Oviedo and Ms. Collins are members of a protected class and repeat and re-allege the allegations in the preceding paragraphs, as if fully set forth herein.

118.    The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as ALSCO has engaged the practice of discrimination

**ORIGINAL COMPLAINT**

with respect to the terms and conditions of Ms. Oviedo and Ms. Collins' employment on the basis of their sex.

119.    Plaintiffs' requests for relief are set forth below.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION FOR A VIOLATION OF**
**Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.***
**(Discrimination on Basis of Disability as Alleged by Ms. Collins Against ALSCO)**

120.    Ms. Collins is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

121.    The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as ALSCO has engaged the practice of discrimination with respect to the terms and conditions of Ms. Collins' employment on the basis of her disability.

122.    Plaintiff's requests for relief are set forth below.

**AS AND FOR A SIXTEENTH CAUSE OF ACTION FOR A VIOLATION OF**
**Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.***
**(Retaliation as Alleged by All Plaintiffs Against ALSCO)**

123.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

124.    The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.* Plaintiffs lodged complaints with ALSCO about discrimination, harassment, and retaliation as well as participated in investigations of discriminatory behavior.

125.    In retaliation, ALSCO, among other things, terminated their employment.

126.    Plaintiffs' requests for relief are set forth below.

**ORIGINAL COMPLAINT**

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION
**Battery**
**(As Alleged by Ms. Oviedo Against Mr. Dikes and ALSCO)**

127.    Ms. Oviedo repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

128.    The conduct alleged herein involved an intentional and offensive touching of Ms. Oviedo who did not consent to the touching by Mr. Dikes.

129.    In addition to individual liability against Mr. Dikes, ALSCO may be held liable for the battery of Ms. Oviedo by a theory of respondeat superior.

130.    Ms. Oviedo's requests for relief are set forth below.

## AS AND FOR AN EIGHTEENTH CAUSE OF ACTION
**Assault**
**(As Alleged by Ms. Oviedo Against Mr. Dikes and ALSCO)**

131.    Ms. Oviedo repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

132.    The conduct alleged herein involved an intentional harmful or offensive touching of Ms. Oviedo who was put in apprehension of such contact by Mr. Dikes.

133.    In addition to individual liability against Mr. Dikes, ALSCO may be held liable for the assault of Ms. Oviedo by a theory of respondeat superior.

134.    Ms. Oviedo's requests for relief are set forth below.

## AS AND FOR A NINETEENTH CAUSE OF ACTION
**Negligent Hiring, Retention, and Supervision**
**(As Alleged by Ms. Oviedo Against ALSCO)**

135.    Ms. Oviedo repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

**ORIGINAL COMPLAINT**

136.    ALSCO had a duty to protect Ms. Oviedo from harm resulting from its employment of supervisors and co-workers that committed assault, battery, and intentional infliction of emotional distress torts, among others, against Ms. Oviedo. ALSCO breached that duty by hiring, retaining, failing to train, supervise, or discipline the tortfeasors. The conduct of ALSCO proximately caused Ms. Oviedo significant damages.

137.    Ms. Oviedo's requests for relief are set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants as follows:

A.  A judgment declaring that the practices complained of herein are unlawful and in violation of the Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e *et seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.*, the Americans with Disabilities Act of 1990, as amended 42 U.S.C. §§ 12111 *et seq.*, and the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein

B.  All damages which Plaintiffs have sustained as a result of Defendants' conduct, including back pay, front pay, benefits, general and specific damages for lost compensation, and job benefits they would have received but for Defendants' discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

C.  Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless, and/or intentional conduct;

**ORIGINAL COMPLAINT**

D.  Awarding Plaintiffs the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

E.  Pre-judgment and post-judgment interest, as provided by law;

F.  That the Court retain jurisdiction over Defendants until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

Granting Plaintiffs other and further relief as this Court finds necessary and proper.  Plaintiffs also seek injunctive relief, including, but not limited to:

G.  Training on the subject of employment discrimination and sexual harassment for all of Defendants' employees;

H.  Diversity training for all managers conducted by reputable outside vendors;

I.  Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

J.  Active monitoring of the work areas to ensure compliance with discrimination policies;

K.  Monitoring by the Court or a federal agency to ensure that Defendants comply with all injunctive relief; and

Plaintiffs further demand that they be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Respectfully Submitted,

Dated:  July 9, 2019

_/s/ Jay D. Ellwanger_____
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law

**ORIGINAL COMPLAINT**

Esha Rajendran
Texas State Bar No. 24105968
erajendran@equalrights.law
Ellwanger Law LLLP
400 South Zang Blvd.
Suite 1015
Dallas, Texas 75208
Telephone: (737) 808-2260
Facsimile: (737) 808-2262

**ATTORNEYS FOR PLAINTIFFS**

**ORIGINAL COMPLAINT**